1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>URIEL ESPINOZA-RUELAS,<br><br>Defendant. | Case No. 15-cr-00302-BLF-1<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**<br><br>[Re:  ECF No. 21] |

The United States filed a criminal complaint against Defendant Uriel Espinoza-Ruelas ("Defendant") on March 19, 2015 based on one count of illegal reentry in violation of 8 U.S.C. § 1326 ("Section 1326"). He was not arrested on the charge until May 8, 2024.  Now before the Court is Defendant's motion to dismiss the indictment under the Speedy Trial Clause of the Sixth Amendment. The Court has considered the moving and responding papers and held a hearing on September 17, 2024. The Court GRANTS the motion.

## I.    BACKGROUND

### A.  Defendant's Criminal and Immigration History

Defendant, an illegal alien, has a lengthy criminal history. In 2008, he was convicted for Driving Under the Influence and for Possession of a Controlled Substance in two unrelated incidents. *See* ECF 10 at 5. In 2009, Defendant was convicted for sexual abuse of a minor and domestic violence. *See* ECF 22, Ex. 1. The victim is his now wife, L.A.. *See id.* Defendant was again arrested for domestic battery of L.A. in October 2009 and for drunk driving in July 2011. *See* ECF 10 at 6.

Due to his criminal convictions, Defendant was deported to Mexico by Immigration and

United States District Court
Northern District of California

Customs Enforcement (ICE) on July 27, 2011. *See* ECF 22, Ex. 3. When deported, Defendant was warned that he was prohibited from entering the United States due to his felony conviction and would be criminally prosecuted under Section 1326 if he reentered the United States without express permission. *See id.*, Ex. 4. Within a week, on August 1, 2011, Defendant was apprehended while attempting to illegally reenter the United States, falsely claiming U.S. citizenship and using a false identity, an Arizona birth certificate and Social Security Card. *See id.*, Ex. 5. Defendant was immediately deported back to Mexico. *Id.* Defendant was again warned of criminal liability under Section 1326 for illegal reentry. *Id.*

**B.  Defendant's 2015 Arrest**

At an unknown time, Defendant illegally reentered the United States again. On March 13, 2015, Defendant was arrested for driving under the influence and driving without a license. ECF 22, Ex. 7. Defendant was driving a green Dodge bearing California License Plate 7BAZ700 at the time of his arrest. *Id.* When booked into the Santa Clara County Jail, Defendant gave his home address as 100 Farallones Street, San Francisco ("Farallones Street") and listed L.A. as the emergency contact. *Id.* Despite an immigration detainer placed on Defendant, he was released without notification to immigration authorities. ECF 22, Ex. 8 at 2.

**C.  Federal Indictment and the Government's Attempts to Locate Defendant**

Stemming from his March 13, 2015, arrest, the Government filed a criminal complaint on March 19, 2015, charging Defendant with illegal reentry in violation of 8 U.S.C. § 1326. *See* ECF 1. On the same day an arrest warrant was issued and the Government sent paperwork to its fugitive task force to locate Defendant.  *See* ECF 21; ECF 21-1, Ex. A.

On March 23, 2015, ICE Officer Deras prepared a fugitive report, which included Defendant's physical description, the Farallones Street address, and identifying information for the green Dodge. *See id.*, Ex. D.

Two weeks later, on April 7, 2015, ICE officers surveilled the Farallones Street address and

2

saw a man who matched Defendant's description leaving the Farallones Street address but did not attempt to contact or arrest him. *See id.*, Ex. E. The next day, on April 8, 2015, ICE officers returned to the Farallones Street address seeking to arrest Defendant. *See id.* There, ICE officers spoke to L.A., obtained her California Driver's License number, and learned that L.A. was the registered owner of the green Dodge and that Defendant was the father of her children. *Id.*  However, L.A. denied that Defendant lived with her and her children at the Farallones Street address. *Id.* ICE Officers found this claim to be contradictory to the fact that Defendant's photos were displayed "all over" the Farallones Street address. *Id.*

On June 1, 2015, in response to an email from ICE Officer Deras, ICE Officer Beliso returned to the Farallones Street address but could not locate anyone and saw no vehicle parked in front. *Id.* Based on this observation, the officers concluded that the family had moved. *Id.* Officer Beliso commented: "Looks like we are going to have to wait until he get[s] arrested again to find out where they live now." *Id.*

Defendant asserts that he and his family continued to live at the Farallones Street address for more than three years. *See* ECF 21 at 3. Defendant has produced credible evidence that he continued to live at the Farallones Street address during that time. *See* ECF 21-1, Ex. G, H. At some point, Defendant and his family moved out of the Farallones Street address. *See* ECF 21 at 3. After leaving the Farallones Street address, Defendant lived at several addresses throughout the Bay Area. *See* ECF 22 at 11; ECF 27 at 5.

On June 4, 2015, the grand jury indicted Defendant on one count of illegal reentry in violation of Section 1326. *See* ECF 2. On September 18, 2017, the Government moved to unseal the indictment to bolster their efforts in locating Defendant. *See* ECF 6. In 2017 and 2019, the Government made two separate inquiries into CLEAR, a commercial identity verification service, for new address or contact information associated with Defendant. *See* ECF 22 at 5. Aside from the CLEAR inquiries, in compliance with the National Criminal Information Center ("NCIC")

regulations, Defendant's warrant was validated yearly between June 2016 and June 2023. *See* ECF 21-2, Ex. P at USA-00189–96. In addition, the Government ran an operator's license query for Defendant in May 2024 but no positive results were returned. *See* ECF 22, Ex. 5.

### D.  Evidence That Defendant Lived Openly After His Indictment

Defendant has presented substantial—and largely undisputed—evidence that he lived openly in the San Francisco Bay Area from the time of the indictment until his arrest in 2024. Since at least 2015, Defendant's true name and/or residential addresses have appeared in numerous public records.

Defendant applied for an auto insurance policy through an agent in Daly City with National General Insurance. *See* ECF 21-2, Ex. I.  The insurance policy covered a period from December 9, 2014, to December 9, 2015, and utilized his and L.A.'s true names. *See id.* On January 30, 2015, the California Department of Health Care Services issued Defendant a Benefits Identification Card under his true name. *See id.*, Ex. J. On March 4, 2019, The Mexican Consulate issued an I.D. card to Defendant under his true name. *See id.*, Ex. K. On September 25, 2019, Defendant signed a yearly lease agreement using his and L.A.'s true names. *See id.*, Ex. L. On March 24, 2023, Defendant signed a lease for his San Jose residence, still using his true name. *See id.*, Ex. N. That same day, the State of California issued Defendant a California Driver License. *See id.*, Ex. O.

Defendant has used several aliases over the years, and those aliases were known to the Government. *See* ECF 22, Ex. 1, 5; ECF 10 at 7. However, there is no evidence suggesting he used any alias during this time period. His alien number and contact information of his father in Mexico are also known to the Government. *See* ECF 21, Ex. R.

### E.  Defendant's 2024 Arrest and Appearance in This Court

On April 3, 2024, Defendant was again arrested for domestic violence against L.A., and was charged with Infliction of Corporeal Injury on a Spouse. ECF 22, Ex. 6. Defendant pled no contest to an additional charge, False Imprisonment, was sentenced to 70 days in jail, and was subsequently

1    transferred to federal custody. *See id.*; ECF 7. On May 8, 2024, Defendant made his initial

2    appearance in this Court and asserted his right to a speedy trial under the Sixth Amendment. ECF

3    13, 14. On July 2, 2024, Defendant filed the pending motion to dismiss the indictment against him,

4    alleging that the delay between his indictment and his arrest violated his Sixth Amendment right to

5    a speedy trial. ECF 21. On July 30, 2024, the Government filed its opposition to the pending motion.

6    ECF 22. On August 13, 2024, Defendant filed his reply. ECF 27.

7    **II.     LEGAL STANDARD**

8            "The Sixth Amendment guarantees that, in all criminal prosecutions, the accused shall enjoy

9    the right to a speedy trial." *Doggett v. United States*, 505 U.S. 647, 651 (1992). Courts have found

10   that a four-factor *Barker* analysis is appropriate in determining whether a case should be dismissed

11   for post-indictment delay: 1) whether delay before trial was uncommonly long, 2) whether the

12   Government or the defendant is more to blame for that delay, 3) whether, in due course, the

13   defendant asserted his right to a speedy trial, and 4) whether the defendant suffered prejudice as a

14   result of the delay. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "None of the four factors

15   are either necessary or sufficient, individually, to support a finding that a defendant's speed trial

16   right has been violated." *U.S. v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008). Rather, the factors are

17   related and "must be considered together with such other circumstances as may be relevant." *Barker*,

18   407 U.S. 533.

19   **III.    DISCUSSION**

20           **A.  Length of Delay**

21           The first *Barker* factor, the length of the delay, is a threshold issue. *Barker*, 407 U.S. at 530.

22   Delay is measured from "the time of the indictment to the time of trial." *United States v. Sears,*

23   *Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989). In reviewing this factor, the Court first decides

24   whether the delay was presumptively prejudicial. *Barker*, 407 U.S. at 530. A delay is presumptively

25   prejudicial if it is more than one year. *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003).

26   If a delay is long enough to be presumptively prejudicial, a judicial inquiry into the other three

27   factors is triggered. *Barker*, 407 U.S. at 530.

28           Here, the delay is presumptively prejudicial, and greatly exceeds the minimum period to

United States District Court
Northern District of California

trigger judicial inquiry. Defendant was indicted by the grand jury on June 4, 2015, and was not arrested until May 8, 2024—nine years after the indictment. ECF Nos. 2, 7. Thus, the first factor weights in Defendant's favor. *See, e.g., United States v. Aguirre*, 994 F.2d 1454, 1457 (9th Cir. 1993) (finding "a five year delay [between indictment and arrest] is long enough to trigger" a further inquiry into other *Barker* factors); *United States v. Araiza*, 675 Fed.Appx. 740, 742 (9th Cir. 2017) (finding an eight-and-a-half year delay between indictment and arrest is long enough to be presumptively prejudicial). Accordingly, the Court will proceed to consider the remaining *Barker* factors.

### B.  Reason for the Delay

For the second *Barker* factor, the court looks to whether the defendant or the government is more to blame for the delay at issue. *Doggett*, 505 U.S. at 651. "The government has 'some obligation' to pursue a defendant and bring him to trial." *Mendoza*, 530 F.3d at 762-63 (quoting *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993)). "If the government fulfills that obligation by pursuing a defendant with reasonable diligence, the defendant does not have a speedy trial claim." *Id.* The government is not required to make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension." *Sandoval*, 990 F.2d at 482. "However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit." *Mendoza*, 530 F.3d at 763.

Defendant asserts that the Government was negligent in its attempts to locate and arrest him. ECF 21 at 6-8. The Government responds that its efforts to arrest Defendant were sufficient and that Defendant actively evaded detection. ECF 22 at 8-13. The Court agrees with Defendant.

### 1.  The Government was negligent in its efforts to apprehend Defendant.

Based on the evidence submitted by the parties, the Government was not reasonably diligent in its attempts to apprehend Defendant. The Court notes that the Government made three diligent attempts to apprehend Defendant at the Farallones Street address between April 2015 and June 2015—the Government's surveillance of the Farallones Street address on April 7, 2015, the Government's attempt to execute the arrest warrant on April 8, 2015, and the Government's visit of the Farallones Street address on June 1, 2015. *See* ECF 21-1, Ex. D. But it is evident that the

Government stopped making serious attempts to apprehend defendant after that point. Following its June 1, 2015 visit to the Farallones Street address, the Government abruptly concluded that Defendant and his family had moved out based on the observation that no one was there and no vehicle was on the street. *See* ECF 21, Ex. D. After that, the Government ceased its attempts to apprehend Defendant at the Farallones Street address and to "wait until [Defendant] get[s] arrested again." *See id.* But the Government could have returned to the Farallones Street address at any time in late 2015 to 2018 to confirm whether Defendant and his family had moved out. Had the Government done that, they might have discovered Defendant and his family still lived there and could have apprehended Defendant years before his 2024 arrest.

The Government argues that it diligently pursued Defendant during the next several years by monitoring official and commercial databases in 2017 and 2019, unsealing Defendant's indictment in 2017, and updating Defendant's arrest warrant annually in the NCIC database between 2016 and 2023. ECF 22 at 11-12. But despite having contact information for L.A. and Defendant's relatives in East Palo Alto and Mexico, the Government made no effort to contact Defendant to inform him of the indictment or to apprehend him. *See Mendoza*, 530 F.3d at 763. Indeed, sister courts in the Ninth Circuit have found the Government's efforts negligent on similar facts. In *United States v. Vasquez*, the Eastern District of California found the Government negligent in apprehending the defendant when it surveilled his last known address about 10 times in the first six months, but then relied solely on database searches after. 15 F. Supp. 3d 1000, 1003 (E.D. Cal. 2014). Similarly, in *United States v. Serrano*, the Southern District of California found the Government negligent because it stopped its effort to apprehend the defendant after a single attempt and merely conducted database checks thereafter. 829 F. Supp. 2d 910, 914 (S.D. Cal. 2011). Like those two cases, here, after the three attempts to apprehend Defendant at the Farallones Street address, the Government decided "not to diligently search" Defendant after 2015 and "may have to bear the responsibility." *Vasquez*, 15 F. Supp. 3d at 1003.  Accordingly, the Court finds the Government was negligent in its effort to apprehend Defendant as the record "is silent as to any efforts by the Government to apprehend" Defendant beyond merely monitoring the online database since late 2015. *Mendoza*, F.3d at 764.

**2.   The Government has not presented evidence that Defendant knew of the indictment or deliberately evaded apprehension.**

The Government claims that Defendant was actively attempting to avoid detection and therefore, its efforts to locate and arrest him were sufficient. ECF 10-11. "If the defendant is culpable in causing the delay—such as when he actively evades prosecution—the prejudice growing from the delay he caused cannot be weighed in his favor." *United States v. Agguire*, 994 F.2d 1354, 1456 n.3 (9th Cir. 1993). "[T]he government is not required to 'make heroic' efforts to apprehend a defendant who is purposefully avoiding apprehension.'" *Mendoza*, 530 F.3d at 763. "However, if the defendant is not attempting to avoid detection and the government makes no serious effort to find him, the government is considered negligent in its pursuit." *Id.*

Here, the Court finds that evidence in the record is insufficient to prove that Defendant knew of the indictment or was actively evading detection. First, the Government relies heavily on the fact that ICE officers made contact with L.A. on April 8, 2015, when they were attempting to execute the warrant against Defendant, to establish that Defendant knew of his Section 1326 charge. ECF 22 at 9. The Government relies on *Sperow* and argues that L.A. would have informed Defendant that there was an immigration raid at their home, and there was an outstanding warrant for his arrest. *Id.* at 9-10 (citing *United States v. Sperow*, 494 F.3d 1223, 1226 (9th Cir. 2007)). In *Sperow*, the officer investigating the case explicitly informed the defendant's brother that the defendant was wanted, and the defendant "knew he was in trouble and intended to evade justice." *Sperow*, 494 F.3d at 1226. Unlike *Sperow,* here, no evidence in the record suggests the ICE officers explicitly told L.A. that they were executing an arrest warrant against Defendant for his federal illegal reentry charge. *See id.*; *see also Doggett*, 505 U.S. at 653-54 (finding the Defendant did not knew of his indictment when his wife did not know of the charges); *Mendoza*, 530 F.3d at 763 (explaining the Government is required to notify a defendant of the indictment or otherwise actively attempt to bring him to trial); ECF 22, Ex. 10 at 1. Nor would it be reasonable to infer that Defendant learned that there was a federal charge against him from L.A.. *See* ECF 22, Ex. 10 at 1. And the Government agents have not testified that they told L.A. that Defendant had been charged with a crime. *See* ECF 22-1. Indeed, Defendant and his family did not immediately move away from the Farallones Street address where the agents attempted to execute the arrest warrant. Rather, they continued to live at

1    the Farallones Street address for three years after. *See Serrano*, 829 F.Supp.2d at 913; ECF 21 at 4.

2    This evidence suggests that Defendant was not deliberately evading apprehension.

3         Second, the Government argues that Defendant was aware of the federal illegal reentry

4    charge against him because he was warned of his criminal liability under Section 1326 during both

5    of his previous deportations. ECF 22 at 10. During both deportations, Defendant was warned that

6    Section 1326 charges may be brought against him if he knowingly reentered and remained in the

7    United States without obtaining the required permission. ECF 22, Ex. 6 at 1. But knowing the

8    possibility of being charged is not the same as knowing he was actually being charged. Thus, the

9    Court finds the warnings were insufficient to establish that Defendant knew he was charged with

10   the felony crime of illegal reentry. *See Mendoza*, 530 F.3d at 763.

11        Third, the Government argues that Defendant was actively evading apprehension by using

12   different aliases and addresses. ECF 22 at 10-11. With respect to different aliases, the Government

13   argues that Defendant had used at least three different names during the commission of different

14   crimes and used fake identity documents when attempting to reenter the United States. ECF 22 at

15   10. But the aliases were known by the Government, and there is no evidence in the record suggesting

16   the aliases were used between his indictment and his arrest. *See* Complaint, ECF 1 at 2. With respect

17   to different addresses, the Government argues that Defendant had at least four different addresses

18   between the time of this indictment and his arrest, many of which could not be verified by Pretrial

19   Services. ECF 22 at 11. As the Defendant correctly pointed out, many of the addresses were

20   incorrectly entered into the Pretrial Services Report. *See* ECF 21 at Ex. L, M, N. Indeed, Defendant

21   lived openly during the time between his indictment and arrest as he used his true name for rental

22   leases and gave his true name and address on his driver's license. *See id.* at Ex. L, N, O. Absent

23   other evidence of evasion, the mere past use of different aliases and different addresses is not enough

24   to prove that he evaded apprehension—especially in light of the countervailing evidence that he

25   lived openly in the Bay Area during this period. *See Mendoza*, 530 F.3d 763 (finding no evidence

26   that the defendant was keeping his whereabouts unknown). Moreover, there is nothing unusual about

27   low income families moving frequently.

28        In sum, the Court finds that the evidence does not show that Defendant "engaged in a pattern

United States District Court
Northern District of California

1  of deception and evasion" for years. To the contrary, the evidence shows that the Government was

2  negligent in apprehending him. ECF 22 at 10. The Court finds the Government is responsible for

3  the lengthy delay between Defendant's indictment and arrest. *See Mendoza*, 530 F.3d at 763.

4      **C.  Assertion of Right to a Speedy Trial**

5      The third *Barker* factor is whether defendant has asserted his right to a speedy trial. *Barker*,

6  407 U.S. at 531. A defendant "has no duty to bring himself to trial." *Id.* at 527. Accordingly, a

7  defendant's obligation to assert his speedy trial right only arises after he knows that he has been

8  indicted. *United States v. Beamon*, 992 F.2d 1009, 1013 (9th Cir. 1993) (finding no fault on

9  defendants for not asserting speedy trial right without knowing they were indicted).

10      The Government argues that Defendant has delayed assertion of his right to speedy trial

11  because the Defendant has known he was wanted for illegal reentry since at least April 2015. ECF

12  22. The Court disagrees. As discussed above, the evidence before the Court does not suggest that

13  Defendant knew about the indictment against him. Instead, the evidence establishes that Defendant

14  lived openly under his true name during the period between his indictment and arrest, such as

15  applying for state benefits and signing a lease using his true name. *See* ECF 21, Ex. I & J. Defendant

16  asserted his speedy trial right when he first appeared before the Court on May 21, 2024. *See* ECF

17  13, 14. Thus, the Court finds this factor favors Defendant. *See Doggett*, 505 U.S. at 653 (finding the

18  Defendant is not blamed for "invoking his speedy trial right only after his arrest" because he did not

19  know about his indictment until after his arrest).

20      **D.  Prejudice**

21      The fourth *Barker* factor requires the Court to consider whether Defendant has suffered

22  actual prejudice as a result of the delay. *Barker*, 407 U.S. at 532. Prejudice is presumed "when the

23  delay is great and attributable to the government." *United States v. Shell*, 974 F.2d 1035, 1036 (9th

24  Cir. 1992). Traditionally, three kinds of prejudice are associated with a speedy trial violation: 1)

25  oppressive pretrial incarceration, 2) anxiety and concern of the accused, and 3) the possibility that

26  the accused's defense will be impaired. *See Beamon*, 992 F.2d at 1014 (citing *Doggett*, 505 U.S. at

27  654). Although prejudice is presumed "when the delay is great and attributable to the government,"

28  the government can rebut this presumption. *See Shell*, 974 F.2d at 1036.

United States District Court
Northern District of California

The parties do not dispute that the first two kinds of prejudice are not at issue. *See* ECF 21 at 8; ECF 22 at 14; ECF 27 at 6. Because the Court finds that the Government was negligent in pursuing Defendant, and the Government's negligence caused the lengthy delay between his indictment and arrest, Defendant is not required to make a specific showing of prejudice. *See Shell*, 974 F.2d at 1036. In its Opposition, the Government argues that, based on the record, prejudice should not be presumed for Plaintiff's defense against his Section 1326 charge. *See* ECF 22 at 12-16. But the Government offers no evidence to rebut the presumption that Defendant suffered prejudice due to the delay caused by its own negligence. ECF 22. The Government only lists documents it would use to prove its case in chief, but fails to address the potential loss of documents or witness memory related to any defense Defendant might have asserted. Thus, the Court finds this factor favors Defendant.

## IV. ORDER

After balancing the *Barker* factors, the Court finds that the almost nine-year delay between Defendant's indictment and arrest violated his Sixth Amendment right to a speedy trial. The Government made no serious effort to apprehend Defendant for a majority of time during this period. For the foregoing reasons, Defendant's Motion to Dismiss the Indictment is GRANTED.

IT IS HEREBY ORDERED that this case, No. 15-cr-302-BLF-1, be dismissed. The Government is not barred from indicting Defendant again under Section 1326 if his presence in the United States violates the law.

The Court FURTHER ORDERS that Defendant be released from the custody of the United States Marshals Service solely with respect to this case, No. 15-cr-00302-BLF-1.

Dated:  October 8, 2024

_____
BETH LABSON FREEMAN
United States District Judge